**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MICHELE GRAY and CHEETAH FOODS LLC,

                                     Plaintiffs

          v.                                          1:20-CV-0896
                                                      (GLS/CFH)

CAPSTONE FINANCIAL and TYLER STONE,

                                     Defendants.


**APPEARANCES:**

Michele Gray
165A Vandenburgh Place
Troy, NY 12180
Plaintiff pro se

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION & ORDER**

          Plaintiffs pro se Michele Gray ("plaintiff") commenced this action on behalf of

herself and co-plaintiff Cheetah Foods LLC ("Cheetah Foods") on August 10, 2020

against defendants Capstone Financial and Tyler Stone.[1]  See Dkt. No. 1.  In lieu of

paying the full filing fee, plaintiff filed a motion for leave to proceed in forma pauperis

("IFP").  See Dkt. No. 2.  After reviewing plaintiff's IFP application, see id., the Court

finds that she may properly proceed in this matter IFP for purposes of filing only.[2]  The

---

[1]  Plaintiff asserts that defendant Stone is the "presumed owner" of Capstone Financial.  See Dkt. No. 1 at 3; see also Dkt. No. 1-1 at 9.

[2] Plaintiff is reminded that, although she has been granted leave to proceed IFP in this action, she will still be required to pay any associated fees that she incurs in this action, including copying and/or witness fees.

1

undersigned must now assess the sufficiency of plaintiff's complaint pursuant to 28 U.S.C. § 1915(e).

## I. Initial Review[3]

### A. Legal Standard

Section 1915(e) of Title 28 of the United States Code directs that when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). As a result, it is the responsibility of the district court to determine whether a plaintiff may properly maintain his or her complaint before permitting him or her to proceed with the action.

To state a claim on which relief can be granted, a complaint must contain, <u>inter alia</u>, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8 (a)(2). "The purpose . . . is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." <u>Flores v. Graphtex</u>, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include:

(1)    a short and plain statement of the grounds for the court's jurisdiction . . .;

(2)    a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3)    a demand for the relief sought . . . .

---

[3] Copies of all unreported decisions cited in this document have been appended for the convenience of the <u>pro se</u> plaintiff.

FED. R. CIV. P. 8(a).  Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct."  Id. at 8(d).

In addition, Rule 10 of the Federal Rules provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.  A later pleading may refer by number to a paragraph in an earlier pleading.  If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b).  This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]"  Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted).

In deciding whether a complaint states a colorable claim, a court must extend a measure of deference to pro se litigants, see Nance v. Kelly, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), also referred to as "special solicitude."  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006).  However, the court also has an obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed.  See, e.g., Fitzgerald v. First E. Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000).  A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims."  Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).  As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative . . .

to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted).   However, "[d]ismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).  In such cases of dismissal, particularly when reviewing a pro se complaint, the court generally affords the plaintiff an opportunity amend the complaint as long as there is a possibility that an amendment would be able to cure the identified defects.  See Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995).  A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

### B.  The Complaint

This dispute arises out of a South Carolina foreclosure proceeding—and a series of property transfers between plaintiff and Cheetah Foods—related to the single-family residence located at 306 Peters Creek Drive in Summerville, South Carolina ("the Real Property").  See Dkt. Nos. 1, 1-1.  On June 4, 2010, plaintiff purchased the Real Property for cash.  See Dkt. No. 1 at 1; Dkt. No. 1-1 at 1-5.  Thereafter, in July 2015, plaintiff transferred the Real Property to Cheetah Foods, a limited liability company that appears to have been wholly owned by plaintiff, by quitclaim deed.  See Dkt. No. 1-1 at 28.

4

In September 2016, plaintiff—as the "managing member" of Cheetah Foods—executed a note in the amount of $123,000 in favor of defendant Capstone Financial and which was secured by a mortgage on the Real Property.  <u>See</u> Dkt. No. 1 at 1-2; <u>see also</u> Dkt. No. 1-1 at 31.   At some unknown point, plaintiff became unable to pay the mortgage due to the size of the monthly payments, as well as the 14% interest rate that accompanied the mortgage.  <u>See</u> Dkt. No. 1 at 2; <u>see also</u> Dkt. No. 1-1 at 32, 33.

In order to avoid foreclosure of the Real Property, plaintiff alleges, <u>inter alia</u>, that she contacted "HUD.com," who told her that the Real Property "was a business" and that she "had to change the [Real Property] out of [Cheetah Foods] and into the plaintiff['s] name[.]"  Dkt. No. 1 at 3-4.  In October 2017, the Real Property was then transferred from Cheetah Foods back to plaintiff by quitclaim deed.  <u>See</u> Dkt. No. 1 at 3-4; Dkt. No. 1-1 at 18-19, 38 ("Subsequently, Cheetah Foods, LLC, Michele Gray, Agent, conveyed the property unto Michele Gray by Quitclaim Deed dated October 17, 2017 and recorded on October 17, 2017.").

In February 2018, Capstone Financial commenced a foreclosure action against plaintiff and Cheetah Foods in the South Carolina Court of Common Pleas, Ninth Judicial Circuit.  <u>See</u> Dkt. No. 1-1 at 30, 44.  Plaintiff and Cheetah Foods did not appear in the action, which plaintiff alleges was the result of improper service.[4]  <u>See</u> Dkt. No. 1 at 4-5; Dkt. No. 1-1 at 30 (noting that the they are "in default as shown by the affidavit filed herein."), 31.

---

[4] In particular, plaintiff alleges that she was not "allowed an opportunity to represent or appear in" the South Carolina foreclosure action "due to the improper serv[ice]" at an address purportedly belonging to plaintiff's sister.  <u>See</u> Dkt. No. 1 at 5, 41.  The undersigned notes that this address—25 W. 132nd Street, Apt. 8E, New York, NY 10037—was utilized by plaintiff in connection with the October 2017 quitclaim deed.  <u>See</u> Dkt. No. 1-1 at 18.

On June 4, 2018—while the foreclosure action was pending in South Carolina state court—plaintiff commenced a bankruptcy proceeding in the U.S. Bankruptcy Court, Central District of California.  See Dkt. No. 1 at 4; see also In re Gray, Docket No. 6:18-BK-14742-WJ (C.C.A., filed 6/4/2018).  According to plaintiff, Capstone Financial was granted relief from the automatic bankruptcy stay.  See Dkt. No. 1 at 4; see also In re Gray, Docket No. 6:18-BK-14742-WJ (C.C.A., filed 6/4/2018) at Dkt. No. 16.  A judgment was entered granting the foreclosure sale in South Carolina on November 20, 2018.  See Dkt. No. 1 at 5; Dkt. No. 1-1 at 39-41.  The Real Property was thereafter sold at a public auction in January 2019.  See Dkt. No. 1-1 at 43-48.

For a more complete statement of plaintiff's allegations and claims, reference is made to the complaint, and its accompanying exhibits, in its entirety.  See Dkt. Nos. 1, 1-1.  Although she does not appear to be seeking title to the Real Property, plaintiff does seek, inter alia, monetary damages for the purchase of a new home.  See Dkt No. 1 at 49.

## II.  The Claims

Plaintiff asserts a litany of grievances arising under federal and state law on behalf of herself and Cheetah Foods.  See Dkt. Nos. 1, 1-1.  Although the precise nature of many of the claims is somewhat difficult to discern—and many of the allegations are vague, conclusory, or otherwise lacking in factual support—the undersigned is mindful that the complaint must be construed with the utmost liberality due to plaintiff's status as a pro se litigant.  See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008).

## A. **Rooker-Feldman** Doctrine

At the outset, the undersigned must address the application of the Rooker-Feldman doctrine, which "prohibits federal jurisdiction in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Kaminski v. Comm'r of Oneida Cty. Dep't of Soc. Servs., 804 F. Supp. 2d 100, 105 (N.D.N.Y. 2011) (quoting Exxon Mobil v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)). "District courts have only original jurisdiction, and cannot reverse or modify the judgment of a state court." Id. Four requirements must be met for the Rooker-Feldman doctrine to apply.

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the proceeding in parallel with ongoing state-court litigation.

Id. at 105-06 (quoting Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005)).

Significantly, Rooker-Feldman bars federal claims, whether raised in state court or not, and which asserts claims that are inextricably intertwined with state court determinations. See Hoblock, 422 F.3d at 84; see, e.g., Talley v. LoanCare Servicing, Div. of FNF, No. 15-CV-5017 (JMA/AKT), 2018 WL 4185705, at *5 (E.D.N.Y. Aug. 31, 2018). "However, '[i]ndependent claims are not barred by Rooker-Feldman even if they involve the identical subject matter and parties as previous state-court suits.'" Borukhov

v. Vartolo, No. 19-CV-3395(JS/SIL), 2020 WL 5424595, at *3 (E.D.N.Y. Sept. 10, 2020) (quoting McCann v. Rushmore Loan Mgmt. Servs., LLC, No. 15-CV-6502, 2017 WL 1048076, at *3 (E.D.N.Y. Mar. 16, 2017)).  "'Rooker-Feldman does not prevent [a] plaintiff from raising federal claims based on the same facts as a prior state court case as long as the plaintiff complains of an injury independent of an adverse decision.'" Carroll v. U.S. Equities Corp., No. 1:18-CV-667 (TJM/CFH), 2019 WL 4643786, at *4 (N.D.N.Y. Sept. 24, 2019).

In this case, although plaintiff generally complains about the South Carolina foreclosure process, she does not seek title to the Real Property and does not attack the Master's Order and Judgment of Foreclosure that resulted from the proceeding. See Dkt. No. 1-1 at 35-42.  Plaintiff does not ask the Court to overturn the underlying state-court judgment, which would likely fall squarely within the contours of Rooker-Feldman.  See, e.g., Vossbrinck v. Accredited Home Lenders, Inc., 773 F.3d 423, 427 (2d Cir. 2014) (applying the Rooker-Feldman doctrine where the plaintiff asked the federal court "to review the state proceedings and determine that the foreclosure judgment was issued in error"); Nath v. JP Morgan Chase Bank, No. 15-CV-3937, 2016 WL 5791193, at *6 (S.D.N.Y. Sept. 30, 2016) ("[C]ourts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the Rooker-Feldman doctrine.").

Instead plaintiff is seeking monetary damages in connection with the issuance and service of the underlying mortgage, which ultimately resulted in the foreclosure of the Real Property.  These claims appear to be independent of an attack on the South Carolina foreclosure proceedings and would not necessarily require the Court to

"review[] the propriety of the state court judgment." Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co., 664 F. App'x 20, 21 (2d Cir. 2016). As a result, when the complaint is liberally construed, the Rooker-Feldman doctrine does not necessarily deprive the Court of jurisdiction. See Worthy-Pugh, 664 F. App'x at 21 ("[T]he Rooker-Feldman doctrine does not prevent a district court from reviewing a claim for damages stemming from an allegedly fraudulent foreclosure judgment, because the district court can determine damages liability without reviewing the propriety of the state court judgment."); Arnow v. Ocwen LLC, No. 1:18-CV-00514 (BKS/TWD), 2018 WL 6290164, at *1 (N.D.N.Y. Dec. 3, 2018) ("To the extent [the p]laintiffs seek damages caused by [the d]efendant's alleged unlawful collection practices . . ., and not injuries caused by the state foreclosure judgment, their claims are not barred by Rooker-Feldman."). Accordingly, the undersigned recommends that based on the somewhat limited (and incomplete) information provided by plaintiff, that the Court decline to reach the issue of whether Rooker-Feldman applies to some or all of plaintiff's claims at this time. See Krowicki v. Sayemour, No. 6:16-CV-1186 (DNH/ATB), 2016 WL 9227665, at *5 (N.D.N.Y. Oct. 5, 2016) (declining, upon initial review, to recommend dismissal under the Rooker-Feldman doctrine), report and recommendation adopted, 2017 WL 2804945 (N.D.N.Y. June 28, 2017).

## B. Parties

### 1. Cheetah Foods

The statute governing appearances in Federal Court provides that "parties may plead and conduct their own cases personally or by counsel[.]" 28 U.S.C. § 1654. The

Second Circuit has interpreted this statute to allow two types of representation: "'that by an attorney admitted to the practice of law by a governmental regulatory body and that by a person representing himself.'" Lattanzio v. COMTA, 481 F.3d 137, 139 (2d Cir. 2007) (quoting Eagle Assocs. v. Bank of Montreal, 926 F.2d 1305, 1308 (2d Cir. 1991)). "The statute does not permit [an] 'unlicensed laymen to represent anyone else other than themselves.'" Lattanzio, 481 F.3d at 139 (quoting Eagle Assocs., 926 F.2d at 1308). Because this statute applies equally to all artificial entities, "a layperson may not represent a separate legal entity such as a corporation." Lattanzio, 481 F.3d at 139; see also Omega Consulting v. Farrington Mfg. Co., 604 F. Supp. 2d 684, 684 (S.D.N.Y. 2009) ("Federal law, however, is clear that a company may not appear pro se but rather must be represented by counsel.").

Here, plaintiff asserts claims on behalf of Cheetah Foods. See Dkt. No. 1 at 1, 2. Although plaintiff may represent herself as pro se party, she may not represent anyone other than herself, including a now dissolved limited liability corporation. See Lattanzio, 481 F.3d at 139. Therefore, it is recommended the complaint be dismissed without prejudice to the extent that it asserts claims on behalf of Cheetah Foods.

### C.  Federal Claims

#### 1.  Fair Debt Collection Practices Act

First, plaintiff's complaint could be construed as raising a challenge pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq.  See Dkt. No. 1 at 25, 49. Congress enacted the FDCPA "'to protect consumers from deceptive or harassing actions taken by debt collectors[,]' with the purpose of 'limiting the suffering

and anguish often inflicted by independent debt collectors.'" Gabriele v. Am. Home Mortg. Servicing, Inc., 503 F. App'x 89, 93 (2d Cir. 2012) (summary order) (internal citations omitted).  The FDCPA proscribes "any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, and applies to foreclosure actions, which are characterized as an "'attempt to collect a debt'" under the FDCPA.  Cohen v. Rosicki, Rosicki & Assocs., P.C., 897 F.3d 75, 82 (2d Cir. 2018).  Claims brought under the FDCPA have a one-year statute of limitations. See 15 U.S.C. 1692k(d); Somin v. Total Cmty. Mgmt. Corp., 494 F. Supp. 2d 153, 158 (E.D.N.Y. 2007).

"In order to make out a claim under the FDCPA, [the plaintiff] must specify the individuals or corporate entities [s]he believes violated [her] rights, and must clearly identify the actions taken by those individuals or entities that constituted violations of [her] rights." Doe v. City of New York, No. 11-CV-3978 (JG/ALC), 2011 WL 3876990, at *2 (E.D.N.Y. Sept. 1, 2011).  Here, plaintiff fails to clearly identify the actions taken by Capstone Financial that she believes violated her rights under the FDCPA.  See id. Plaintiff merely sets forth the statutory citations to the FDCPA and notes that "abusive debt collection practices could contribute to problems like unemployment and bankruptcy[.]"  See Dkt. No. 1 at 25, 49.  In other sections of her complaint, plaintiff asserts that she was not "allowed an opportunity to represent or appear in court procedure due to the improper serv[ice] to the plaintiff['s] sister address."  Dkt. No. 1 at 41.  This, plaintiff alleges, resulted in the default judgment in the South Carolina foreclosure action.  See id.

Even assuming that these allegations are sufficient to state a cause of action under the FDCPA, the claim is well outside the one-year statute of limitations. The allegedly improper service occurred at some point prior to the entry of the Master's Order and Judgment of Foreclosure in November 2018 and sale of the Real Property in early 2019. See Dkt. No. 1-1 at 35-42. The complaint does not contain any allegations that Capstone Financial or its representatives communicated with plaintiff in any manner—lawful or otherwise—following her loss of title to the Real Property, and plaintiff did not commence this action until more than one year later. See Somin, 494 F. Supp. 2d at 159 ("[T]he last possible communication-lawful or otherwise-that Plaintiff could have had . . . regarding this matter occurred more than a full year prior to commencement of this action."). As a result, because plaintiff's FDPCA claim is clearly time-barred, it is recommended that the claim be dismissed with prejudice.

### 2. Single Family Mortgage Foreclosure Act

Plaintiff alleges that Capstone Financial failed to comply with certain provisions of the Single Family Mortgage Foreclosure Act ("SFMFA"), 12 U.S.C. § 3751 et seq. Dkt. No. 1 at 13, 33-34 (citing, inter alia, 12 U.S.C. §§ 3757, 3758). SFMFA only applies to federal foreclosure proceedings that are initiated on behalf of the Secretary of the U.S. Department of Housing and Urban Development ("HUD"). See Termarsch v. Homeq Servicing Corp., 399 F. Supp. 2d 827, 829 (W.D. Mich. 2005); see also 12 U.S.C. § 3751. Although plaintiff mentions reaching out to "HUD.com"—a website that does not appear to bear any affiliation with HUD—plaintiff does not allege that HUD either issued or held the underlying mortgage. See Dkt. No. 1. Instead, plaintiff alleges that

Capstone Financial, an entity to which SFMFA does not apply, held her mortgage. See Termarsch, 399 F. Supp. 2d at 829. Because it appears that this action does not involve a HUD loan, the undersigned recommends that plaintiff's SFMFA claim be dismissed.

### 3.  National Bank Act

Plaintiff alleges that Capstone Financial charged an usurious interest rate in contravention of the National Bank Act, 12 U.S.C. § 21 et seq. See Dkt. No. 1 at 10, 34 (citing 12 U.S.C. § 86). Section 85 of the National Bank Act establishes limits on the interest rate that a nationally-chartered bank may charge on a loan. See 12 U.S.C. § 85. This rate of interest is generally tied to the rate allowed in the state where the national bank is located. See id. 12 U.S.C. § 85; see Marquette Nat. Bank of Minneapolis v. First of Omaha Serv. Corp., 439 U.S. 299, 310 (1978). Section 86, in turn, "sets forth the elements of a usury claim against a national bank, provides for a [two]-year statute of limitations for such a claim, and prescribes the remedies available to borrowers who are charged higher rates and the procedures governing such a claim." Beneficial, 539 U.S. at 9. Here, plaintiff has not alleged that Capstone Financial is a nationally-chartered bank and, indeed, documents attached to the complaint reflect that it is merely a limited liability company. See Dkt. No. 1-1 at 9. In the absence of any factual allegation that plausibly suggests Capstone Financial is a nationally-charted ban subject to the provisions of the National Bank Act, the undersigned recommends that the claim be dismissed. See Madden v. Midland Funding, LLC, 786 F.3d 246, 249 (2d Cir. 2015).

#### 4. Real Estate Settlement Procedures Act

Plaintiff's complaint can also be construed as alleging that because Capstone Financial refused to modify the mortgage, it violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq., and Regulation X, 12 C.F.R. §§ 1024.1-1024.41.[5]  See Dkt. No. 1 at 18-19, 34.  "Section 1024.41 prohibits, among other things, a loan servicer from foreclosing on a property in certain circumstances if the borrower has submitted a complete loan modification, or loss mitigation, application." Campbell v. Nationstar Mortg., 611 F. App'x 288, 296 (6th Cir. 2015).

First, only loan servicers have a duty arising under the regulations.  See Green v. Cent. Mortg. Co., 148 F. Supp. 3d 852, 877 (N.D. Cal. 2015) ("The regulations circumscribe the conduct of loan servicers only").  There are no allegations that Capstone Financial was the loan servicer; instead, it appears that the loan servicer— whose conduct would be circumscribed by the regulations—is either ClearSpring Loan Services or "Sortia Financial."  See Dkt. No. 1 at 6; see also Dkt. No. 1-1 at 52-54.

Second and fatal to plaintiff's claim, is that the complaint does not contain any factual allegations regarding her submission of a loan modification application.  The regulations require an initial application "be sent '45 days or more before a foreclosure sale,'" Bustos v. Chase, No. 16 Civ. 0822, 2016 WL 5930303, at *4 (S.D. Cal. Oct. 12, 2016) (quoting 12 C.F.R. § 1024.41(b)(2)(i)), and that a completed application be submitted more than 37 days before a foreclosure sale, see Gresham v. Wells Fargo

---

[5]  On January 10, 2014, amendments to Regulation X, codified at 12 C.F.R. § 1024.41 and promulgated pursuant to the Dodd-Frank Act and RESPA, took effect.  See Campbell, 611 F. App'x at 296-97.

Bank, N.A., 642 F. App'x 355, 359 (5th Cir. 2016) (citing 12 C.F.R. § 1024.41(g)). The complaint does not contain any details about whether plaintiff actually submitted a completed loan modification application, to whom and when the application was sent, and whether she received a response.[6]  In the absence of this information, plaintiff does not plausibly allege a claim for relief under RESPA.  See Dins v. Bank of Am., N.A., No. 16-CV-5741 (KBF), 2017 WL 570944, at *4 (S.D.N.Y. Feb. 13, 2017).  Accordingly, the undersigned also recommends that the RESPA claim be dismissed.

### 5. Federal Trade Commission Act

In addition, plaintiff's complaint can also be construed as alleging violations of the Federal Trade Commission ("FTC") Act.  See Dkt. No. 1 at 23-24, 39 (citing 15 U.S.C. § 45), 40, 42 (citing 15 U.S.C. § 45d).  The FTC Act, however, does not provide a private right of action.  See Naylor v. Case & McGrath, Inc., 585 F.2d 557, 561 (2d Cir. 1978).  Instead, "the provisions of the [FTC] Act may be enforced only by the Federal Trade Commission."  Alfred Dunhill Ltd. v. Interstate Cigar Co., 499 F.2d 232, 237 (2d Cir. 1974).  "Nowhere does the Act bestow upon either competitors or consumers standing to enforce its provisions."  Id; see Oliver v. U.S. Bancorp, No. 14-CV-8948, 2015 WL 4111908, at *6 (S.D.N.Y. July 8, 2015) ("Notwithstanding [the] plaintiffs' conclusory reference to the FTC Act, it is well settled that there is no private right of action under the statute.").  As a result, because plaintiff cannot maintain a cause of action under the FTC Act, it is recommended that the claim also be dismissed.

---

[6]  Plaintiff does allege that in October 2018, she contacted defendant Stone—who appears to be an employee of Capstone Financial—and requested modification of the mortgage terms.  See Dkt. No. 1 at 3.  According to plaintiff, defendant Stone responded, "no way." Id.  Beyond contacting an employee via e-mail, there is no indication that plaintiff submitted an application.

### 6. Equal Credit Opportunity Act

Plaintiff also appears to allege a violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691 et seq.  See Dkt. No. 1 at 31, 39-40, 49  Under ECOA, it is unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction "on the basis of race, color, religion, national origin, sex or marital status, or age[.]"  15 U.S.C. § 1691.  "Proof of intentional discrimination under the ECOA generally follows the same burden-shifting methodology employed in Title VII cases."  Thompson v. Marine Midland Bank, 198 F.3d 235 (2d Cir. 1999).  Therefore, the complaint must allege that the plaintiff was a member of a protected class, that she qualified for a loan, that the defendant took adverse action against her with respect to the loan, and the defendant showed preference for someone outside of the protected class.  See id.

In this case, plaintiff's sole allegation in support of a claim arising under ECOA is that she is a member of a protected class.  See DKt. No. 1 at 39-40.  There are no facts that plausibly suggest that she qualified for a loan, that Capstone Financial took adverse action against her with respect to that loan, or that Capstone Financial showed preference for someone outside of plaintiff's protected class.  See Thompson, 198 F.3d at 235.  Despite plaintiff's express reference to ECOA, her sparse allegations fail to plausibly suggest that she has a colorable claim.  It is therefore recommended that plaintiff's ECOA claim be dismissed.

### 7. Truth in Lending Act and Home Ownership Equity Protection Act

Plaintiff's complaint appears to also allege violations of the Truth in Lending Act, 15 U.S.C. § 1601, et seq. ("TILA"), its 1994 amendment—the Home Ownership Equity Protection Act ("HOEPA")—and Regulation Z, 12 C.F.R. Part 226. See Dkt. No. 1 at 1, 25, 26, 30, 35, 40, 49. TILA requires lenders to make certain disclosures to borrowers and gives borrowers a civil cause of action against creditors who violate these disclosures. See Dolan v. Fairbanks Capital Corp., 930 F. Supp. 2d 396, 418 (E.D.N.Y. 2013). The HOEPA amended the TILA and therefore is "governed by the same remedial scheme and statute of limitations." Harris v. EMC Mortg. Corp., No. 01-4868, 2002 WL 32348324, at *2 (E.D. Pa. Apr. 10, 2002). Claims under TILA and HOEPA must be brought within one to three years of the alleged violation. See 15 U.S.C. § 1640(e) (imposing a one-year limitations period on TILA actions brought pursuant to section 1640 and a three-year limitations period on actions brought pursuant to sections 1639, 1639(b), and 1639(c)).[7]

Here, plaintiff generally alleges that Capstone Financial offers "HOEPA loans defined by FTC as high-rate and high fee loans," engages in "abusive practices in refinances and closed-end home equity loans with high interest rates or high fees," "violates transacting and fraudulent loan practices," "plaintiff is injured by the . . . unfair,

---

[7] Section 1640(e) also provides that "[t]his subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law." 15 U.S.C. § 1640(e). As a result, recoupment may be asserted after the limitations period when used as a defense to a debt collection action. Here, however, because plaintiff asserts a freestanding claim for relief following a concluded foreclosure action, she cannot be permitted to circumvent the statute of limitations. See Van Pier v. Long Island Sav. Bank, 20 F. Supp. 2d 535, 536 (S.D.N.Y. 1998) ("Under the plain language of the statute, however, this argument is unavailing, because here plaintiff asserts his TILA claim affirmatively, in an action for damages that he himself commenced, and not as a defense 'in an action to collect the debt.'"); see also R.B. Moor v. Travelers Ins. Co., 784 F.2d 632, 634 (5th Cir. 1986) ("When the debtor hales the creditor into court, . . . the claim by the debtor is affirmative rather than defensive.").

deceitful, and otherwise abusive loan practices (predatory lending), and Capstone

Financial "violates of the high-rate, high-fee[.]" Dkt. No. 1 at 1, 26, 40 (errors in original).

Under any construction of these allegations, plaintiff's claims are barred by either a one-

or a three-year statute of limitations, which accrues on the date the underlying loan

transaction was consummated, i.e., late 2016.  See Dkt. No. 1 at 1-2, Dkt. No. 1-1 at 31;

see also 15 U.S.C. § 1640(e).  Accordingly, because plaintiff did not initiate this action

until August 10, 2020, see Dkt. No. 1, any possible violations of TILA, HOEPA, and

Regulation Z are well outside the limitations period, and the undersigned recommends

that the claims be dismissed with prejudice.


### 8. Violation of the Automatic Bankruptcy Stay

Although plaintiff acknowledges in the complaint that Capstone Financial was

granted relief from the automatic bankruptcy stay, see Dkt. No. 1 at 4, she alleges that

the actions of Capstone Financial violated the automatic bankruptcy stay.  See Dkt. No.

1 at 37 (citing 11 U.S.C. § 105), 41-42 (citing 11 U.S.C. § 362).  This court is without

jurisdiction to hear that claim and it is therefore "subject to mandatory dismissal."  Marin

v. City of Utica, 140 F. App'x 304 (2d Cir. 2005) (summary order) (citing See E. Equip. &

Servs. Corp. v. Factory Point Nat. Bank, Bennington, 236 F.3d 117, 121 (2d Cir. 2001)

("recovery of compensatory and punitive damages for willful violations of [an] automatic

stay . . . must be brought in the bankruptcy court, rather than in the district court, which

only has appellate jurisdiction over bankruptcy cases")); but see Justice Cometh, Ltd. v.

Lambert, 426 F.3d 1342, 1343 (11th Cir. 2005).  Because plaintiff must seek her relief

from the U.S. Bankruptcy Court, Central District of California, the undersigned

recommends that plaintiff's claim that the automatic stay was violated be dismissed with prejudice.

### 9. Remaining Federal Claims

In her complaint, plaintiff cites to a number of federal statutes, regulations, and even a General Order issued from the United States Bankruptcy Court in the Eastern District of New York.[8]  See generally Dkt. No. 1.  To the extent that plaintiff's federal claims were not already addressed above, the undersigned is unable discern any additional cognizable federal claims and declines to construct a legal theory on her behalf.  Accordingly, it is recommended that any remaining federal claims—to the extent not already addressed above—be dismissed.

### D.  State Law Claims

Plaintiff also appears to be asserting several common law claims arising under New York and South Carolina law, including "wrongful foreclosure," negligent infliction of emotional distress, violations of unspecified provisions of the Uniform Commercial Code, and breach of contract.  See, e.g., Dkt. No. 1 at 38-39, 41, 43 49.  In addition,

---

[8]  For example, plaintiff asserts that she did not receive a Universal Loan Identifier pursuant to 12 CFR § 1003.4.  See Dkt. No. 1 at 35. That regulation falls under the Home Mortgage Disclosure Act ("HMDA"), see 12 U.S.C. § 2801 et seq., which provides for administrative enforcement and does not create a private right of action.  See Macauley v. Estate of Nicholas, 7 F. Supp. 3d 468, 486 (E.D. Pa. 2014) ("The HMDA does not provide aggrieved mortgagees with private right of action; only the appropriate administrative agency can properly maintain an action." (citing 12 U.S.C. § 2804)).  In addition, plaintiff cites to 15 U.S.C. § 6611 and asserts that she is entitled to tort damages.  See Dkt. No. 1 at 42, 49.  That particular statutory provision provides for tort damages as a result of the "Y2K failure," however, and bears absolutely no connection to this action.  See Jackson v. Beswick, No. 20-CV-2196 (JAR/TJJ), 2020 WL 3288051, at *4 (D. Kan. June 18, 2020).  The complaint is replete with similar examples.  See, e.g., Dkt. No. 1 at 44 (citing to 34 CFR § 300.508, which applies to the Due Process Complaints in connection with the Individuals with Disabilities in Education Act); 47 (citing 5 C.F.R. § 732.301), 42 (citing the Federal Tort Claims Act, , 28 U.S.C. § 2671 et seq.).

plaintiff alleges that Capstone Financial engaged in predatory lending in violation of what she refers to as "Unfair and Deceptive Acts and Practices," which seems to refer to both N.Y. Business Law § 349 and the South Carolina Unfair Trade Practices Act, codified at S.C . Code Ann. § 39–5–20(a).  See Dkt. No. 1 at 40-41.

Here, the undersigned has recommended that each of plaintiff's federal claims be dismissed.  As a result, the undersigned also recommends that the Court decline to exercise supplemental jurisdiction over any of the remaining state law claims, without prejudice to re-filing in state court.  See Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 120 (2d Cir. 2006); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988) ("[T]he balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will [generally] point toward declining to exercise jurisdiction over the remaining state-law claims.").

### III.  Where to Permit Amendment

Ordinarily, a court should not dismiss a complaint filed by a pro se litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated."  Branum v. Clark, 927 F.2d 698, 704-05 (2d Cir. 1991); see also Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); Mathon v. Marine Midland Bank, N.A., 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a [valid cause of action]").  An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."

Cuoco v Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000); see also Cortec Indus. Inc. v. Sum

Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to

allege any fact sufficient to support its claim, a complaint should be dismissed with

prejudice."). Stated differently, "[w]here it appears that granting leave to amend is

unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend."

Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993).

In this case, several of plaintiff's claims simply would not be salvageable even

with better pleading. See supra. The undersigned cannot conclude, however, that

better pleading would be futile for all of plaintiff's potential causes of action. In an

overabundance of caution, and in deference to her status as a pro se litigant, the

undersigned recommends that plaintiff be granted one opportunity to amend her

complaint with the benefit of the guidance provided by this Report-Recommendation

and Order.

If plaintiff chooses to avail herself of the opportunity to amend her complaint, the

new pleading must set forth a short and plain statement of the facts on which she relies

to support any legal claims asserted. See Fed. R. Civ. P. 8(a). Plaintiff is reminded that

any amended complaint will replace the existing complaint and exhibits. See Dkt. Nos.

1, 1-1. As a result, any amended complaint must be a wholly integrated and complete

pleading that does not rely upon or incorporate by reference any pleading or document

previously filed with the court . See Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124,

1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily

supersedes the original, and renders it of no legal effect." (internal quotation marks

omitted)).

## IV. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED**, that the motion for leave to proceed IFP (Dkt. No. 2) is **GRANTED** as to plaintiff Michele Gray only; and it is

**RECOMMENDED**, that the claims asserted by co-plaintiff Cheetah Foods LLC be **DISMISSED** without prejudice; and it is

**RECOMMENDED**, that plaintiff's Fair Debt Collection Practices Act, Federal Trade Commission Act, Truth in Lending Act, Home Ownership Equity Protection Act, and violation of the automatic bankruptcy stay claims be **DISMISSED** with prejudice; and it is

**RECOMMENDED**, that the remainder of plaintiff's complaint be **DISMISSED** without prejudice and with leave to replead; and it is

**RECOMMENDED**, that, if the District Judge permits plaintiff to amend her complaint, any amended complaint must be filed within thirty (30) days of the District Judge's order adopting this Report-Recommendation and Order, and that should plaintiff file such amended complaint, the Clerk of the Court return this case to the Magistrate Judge for further review.

**ORDERED**, that the Clerk of the Court serve this Report-Recommendation and Order on plaintiff in accordance with the Local Rules; and it is

Pursuant to 28 U.S.C. § 636(b)(1), parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the . . . recommendation."  N.Y.N.D. L.R. 72.1(c) (citing 28 U.S.C. §636(b)(1)(B)-(C)).  **FAILURE TO OBJECT TO THIS**

**REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15

(2d Cir. 1989); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).[2]

Dated: September 22, 2020
       Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[2]  If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).